UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL TORRES, | ) | Case No. 1:08CV1559 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE KATHLEEN O'MALLEY |
| | ) | (Magistrate Judge McHargh) |
| MICHAEL SHEETS, | ) | |
| Warden, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner, Angel Torres ("Torres"), has filed an amended petition for a writ of habeas corpus through counsel, arising out of his 2005 convictions for aggravated murder, murder, aggravated burglary and other crimes, in the Cuyahoga County (Ohio) Court of Common Pleas. (Doc. 5.) In his petition, Torres raises three grounds for relief:

> 1. The petitioner's conviction is void or voidable due to violation of his constitutional right to be secure against unreasonable searches or seizures as guaranteed by the Fourth Amendment to the United States Constitution.

2.  The petitioner's conviction is void or voidable due to violation of his constitutional right to confront witnesses as guaranteed by the Sixth Amendment to the United States Constitution.

3.  The petitioner's conviction is void or voidable due to violation of his constitutional right to have compulsory process for obtaining witnesses in his favor, as guaranteed by the Sixth Amendment to the United States Constitution.

([Doc. 5](), at 5.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

The Cuyahoga County Grand Jury indicted Torres for four counts of aggravated murder, with specifications for mass murder and felony murder, four counts of aggravated robbery, and four counts of aggravated burglary.[FN] Torres entered a plea of not guilty and the matter proceeded to a jury trial.

> [FN] The Grand Jury also indicted Torres on one count each for theft, forgery, and uttering.  However, because these counts arose out of Torres' theft and subsequent forgery of Zaida Rosa's checks approximately one month prior to the murders, they were severed and tried to the bench after the trial concluded.  The trial court found Torres guilty of these remaining counts.

Cleveland Police Officer Eric Tammisaar found the bodies of Zaida Rosa, Torres' mother, and her sister-in-law, Angelica Nieves, in Zaida Rosa's home, victims of an apparent homicide.  Both women had been stabbed repeatedly.  The officer noted the lack of any evidence of a forced entry and the locked doors.  The rooms in the house were intact, except Zaida Rosa's room.  The officer observed that the deadbolt lock had been forced open.  A box of Zaida Rosa's personal checks was on the floor between the bed and dresser.  Otherwise, the remaining items were in place; however, the photograph of Zaida Rosa's husband and Torres' father was faced down on the entertainment center.

In the basement, the officer observed forced entry into the storage room. The items contained therein were neatly arranged except one empty space, which to the officer appeared that something had been removed.

After further investigation and speaking with other family members, the officer learned that Torres' father had committed suicide after he had been charged with raping his eleven year-old granddaughter and the accusation from his daughter, Maribel Torres, that he had raped her when she was a child. The officer was told that Torres had resided with his mother until June 4, 2003, and that he had stolen her checks and written fraudulent checks to Wilson Bastita, totaling $10,000.

Maribel Torres informed the police that Torres had been calling her asking for money and she last saw him on August 7, 2003. The last communication with Rosa was initiated by her son on August 10th. Her body was found on August 13, 2003. Maribel Torres told the police that Torres was angry with his mother and that he was very violent.

Torres was arrested, taken to the police station, and "mirandized." Ultimately, Detective Kovach interviewed him about the murders. He denied the murders and surmised that someone broke into the house and killed the victims for money. The detective responded that no one would believe that a burglar would break into the house and then lock the doors upon leaving.

Torres than confessed to the detective. He stated he went with his girlfriend, Susan Zicarelli, to his mother's house on Monday, August 11. They went there to pick up the rest of his belongings. The girlfriend waited in the car. While inside, he blacked out while speaking to his mother. He claimed he had become upset after thinking about how his father had raped his sister and niece, how his mother was blaming the sister for telling the police, and how his mother would not give him any money. He also blamed his mother for not stopping the father from molesting his sister when she was young. He stated, "things just boiled up." He did not want to kill his aunt but did because she "was there." He stated after he killed his mother and his aunt, he went back to the car and left. He said he returned to the house on Tuesday, because it felt like a dream; he thought everybody would be okay.

Torres' statement was reduced to writing. However, after the detective typed the statement, Torres refused to sign it until he communicated

3

with his attorney. Torres than wrote the word, "Gangey" in the upper right hand corner, so that he would know that the statement was his.

Although no blood was found on the clothing retrieved from Susan Zicarelli's house, a drop of blood matching Zaida Rosa's DNA was found on a pair of Torres' tennis shoes. No fingerprints were discovered from the alleged weapons.

After Torres was arrested, Susan Zicarelli was questioned. She told officers that she and Torres had gone to his mother's house on August 11 between 11:00 a.m. and 2:00 p.m. She stated she waited in the car for a half-hour. She was angry because it was hot. She became impatient and knocked on the door and rang the doorbell, but no one responded. Torres then finally exited the house with a box of car detailing equipment and several hundred dollars in cash.

At his trial, several inmates testified against Torres. Eddie Farrell testified that Torres told him he killed his mother and aunt after getting into an argument with his mother. He told Farrell he blacked out and left a pair of scissors imbedded in his mother. He also told him that Susan Zicarelli disposed of the clothing he wore on the date of the murders.

Fabian DeJesus testified he and Torres knew each other from the neighborhood and became friends while in jail. Torres told DeJesus he got into an argument with his mother. His aunt tried to intervene. He tied the women up and then started stabbing his mother with scissors. After killing his mother, he killed his aunt. He told DeJesus that he was initially going to take some checks, but left them because he did not want the murders linked to him. He believed the fact he stole checks before would implicate him. He told DeJesus he burned the clothes that he wore during the murders.

The jury found Torres guilty of two counts of aggravated murder regarding Zaida Rosa, along with the mass murder and felony-murder specifications. The jury found Torres guilty of aggravated murder of Angela Nieves with the mass murder specification, but not guilty of the felony-murder specification. Torres was found not guilty of the second count of aggravated murder against Angela Nieves, but the jury found he was guilty of the lesser included offense of murder. The jury found Torres guilty of two counts of aggravated robbery against Zaida Rosa, but not guilty of the two counts of aggravated robbery against

Angela Nieves. He was found guilty of all four counts of aggravated burglary.

After the conclusion of the penalty phase of the trial, the jury rejected the death penalty as punishment. The trial court sentenced Torres to life in prison.

(Doc. 14, RX 28, at 2-6; State v. Torres, No. 86530, 2006 WL 2023578, at *1-*2 (Ohio Ct. App. July 20, 2006).)

Torres filed a timely direct appeal of his conviction, based on the following eight assignments of error:

> 1. The trial judge erred in overruling a defense motion to suppress statements obtained as the result of an improper warrantless arrest of the appellant in his residence.
>
> 2. The trial court erred by unduly restricting the defense cross-examination of Detective Denise Kovach.
>
> 3. The court erred by failing to dismiss Counts Three and Four, Aggravated Murder pursuant to R.C. §2903.01(B) on the basis of a void or voidable indictment.
>
> 4. The trial court denied the appellant his right of compulsory process and right to present a defense by precluding the testimony of Dr. Richard Ofshe.
>
> 5. The trial court's erroneous culpability phase jury instructions denied the appellant his federal due process rights to a fair trial.
>
> 6. The failure to object to erroneous culpability phase jury instructions denied the appellant his right to effective assistance of counsel.
>
> 7. The evidence is insufficient to sustain a conviction for the element of prior calculation and design.
>
> 8. The trial court erred by precluding the testimony of a defense witness to testify in the penalty phase of trial because the testimony related to the issue of residual doubt and by refusing to instruct the jury that it could consider such as mitigation.

(Doc. 14, RX 26.)  On July 20, 2006, the court of appeals affirmed the conviction. (Doc. 14, RX 28; State v. Torres, No. 86530, 2006 WL 2023578 (Ohio Ct. App. July 20, 2006).)

Torres pro se filed an application for reopening his appeal, pursuant to Ohio App.R. 26(B), on Nov. 1, 2006, based on the following assignments of error:

> 1.  The defendant was denied his Sixth Amendment right to compulsory process and right to confrontation, and due process of law guaranteed by the Fourteenth Amendment, because the trial court failed to allow the appellant to inquire about evidence of third-party guilt.
>
> 2.  The appellant was denied his Sixth Amendment right to confront a witness, because the trial court refused to permit an in camera inspection of the statement of police officers, pursuant to Crim. 16(B)(2).
>
> 3.  The appellant was denied the effective assistance of counsel on appeal.

(Doc. 14, RX 29.)  The court of appeals denied the application as untimely filed. (Doc. 14, RX 30; State v. Torres, No. 86530, 2007 WL 18794 (Ohio Ct. App. Jan. 3, 2007).)

Torres filed a motion for delayed appeal to the Supreme Court of Ohio on Jan. 17, 2007.  (Doc. 14, RX 31.)  The court granted the motion (doc. 14, RX 32), and Torres asserted the following propositions of law:

> 1.  Any statement obtained from a criminal defendant subsequent to an arrest made in the home without a warrant is inadmissible, regardless of whether Miranda warnings were provided.
>
> 2.  The trial court does not have the right to restrict cross-examination on an issue that forms the core of the dispute as to the credibility of that particular witness.

    3. Each and every element of a charged offense must be specifically addressed in the relevant count. Simply listing the name of the charge, without the elements, does not comport with grand jury and due process requirements.

    4. Where an expert has specialized information which may assist the jury in evaluating material issues in the case, the refusal to allow the expert to testify constitutes a denial of the defendant's right to present a defense.

    5. Where a defendant is charged with felony-murder pursuant to R.C. §2901(B), the trial court may not instruct the jury as to the element of prior calculation and design where the defendant is the principal offender for the Aggravated Murder.

    6. The failure to object to and preserve meritorious issues constitutes ineffective assistance of counsel where the failure renders the verdict unreliable.

    7. A murder committed as the result of a spontaneous explosion of built [up] rage does not constitute prior calculation and design.

(Doc. 14, RX 33.) On July 25, 2007, the Supreme Court of Ohio denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. (Doc. 14, RX 35; State v. Torres, 114 Ohio St.3d 1479, 870 N.E.2d 731 (2007).)

    Torres filed a petition for a writ of habeas corpus in this court on June 27, 2008. (Doc. 1.) After counsel filed an appearance on his behalf, Torres filed his amended petition on July 25, 2008. (Doc. 5.)

## II. HABEAS CORPUS REVIEW

    This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III.  GROUNDS ONE AND THREE

The respondent argues that the first ground of the petition, based on an alleged Fourth Amendment violation, is not cognizable in federal habeas. (Doc. 14, at 14-15, 26-33.)  See generally Stone v. Powell, 428 U.S. 465, 494 (1976); Smith v. Bradshaw, No. 5:04CV1235, 2006 WL 2233211, at *4 (N.D. Ohio Aug. 3, 2006). Torres concedes that the first ground is barred. (Doc. 19, at 6.)

The respondent also contends that the third ground of the petition, based on an alleged Sixth Amendment violation, is also not cognizable. (Doc. 14, at 20-24, 36-39.)  Torres concedes that the third ground is barred. (Doc. 19, at 10.)

### IV.  CONFRONTATION CLAUSE VIOLATION

The second ground of the amended petition is: "The petitioner's conviction is void or voidable due to violation of his constitutional right to confront witnesses as guaranteed by the Sixth Amendment to the United States Constitution." (Doc. 5, at 5.)  Specifically, the constitutional violation is that "the trial court erred by unduly restricting the defense cross-examination of Detective Denise Kovach." Id.

On appeal, Torres argued:

> The key piece of evidence in this case was a confession provided to Detective Denise Kovach in a less than reliable setting.  According to the detective, she interviewed the appellant by himself in the jail within a couple of days of the homicide.  According to her testimony, the appellant first denied the offense.  After hours of discussing his life and problems with Kovach alone, the appellant told her that someone else must have broken in to steal money (T. 1708.)  Eventually, he proceeded to confess to the offenses.  (T. 1709, 1713-1716.)

9

> \* \* \* \* \*
>
> Det. Kovach destroyed the notes after the statement had been typed. (T. 1762)  She presented the typed statement to the appellant.  The appellant refused to sign the statement.  (T. 1717)
>
> The defense sought to further impeach the detective and her tactics with the facts from another case in which she obtained a confession. In murder charges involving a man named Derrick Starks, Det. Kovach obtained a confession from Mr. Starks.  The confession turned out to be bogus.  The case was dismissed as the state determined that another man committed the offense for which the state had originally charged Mr. Starks.
>
> The defense wanted to point out the similarities of the two confessions. In both statements, the suspect had purportedly had a blackout.  In both cases the suspect had stated words to the effect of, "I blacked out, I must have done it."  (T. 1644)
>
> The trial court granted a state motion in limine to preclude the defense from asking Det. Kovach about the Starks procedure.  (T. 1651)  The refusal to allow cross-examination on a subject that went directly to the heart of this matter, the confession, violated both the federal and state confrontation clauses.

(Doc. 14, RX 26, at 13-14.)  The state court of appeals rejected this assignment of error, ruling:

> . . . Torres claims the trial court erred by restricting his cross-examination of Detective Kovach.  Torres' counsel attempted to impeach Detective Kovach's testimony with an unrelated case involving Detective Kovach.  In the unrelated case, the defendant recanted his confession.
>
> Trial courts have broad discretion in determining the relevance or irrelevance of evidence.  We conclude the trial court did not abuse its discretion by not permitting evidence of the unrelated case.  In the other case, the defendant confessed to committing the crime.  Later, another inmate confessed to committing the same crime, causing the first defendant to recant.  However, in this matter, Torres claimed he never confessed.  More importantly, he does not argue that Detective

10

> Kovach committed any act or procedure that was illegal or improper. Accordingly, Torres' second assigned error is overruled.

(Doc. 14, RX 28, at 12; Torres, 2006 WL 2023578, at *5.)

The respondent argues that this issue should not be seen as a Confrontation Clause violation, but rather an issue of the exclusion of evidence, and that the appellate court properly ruled that the trial court did not abuse its discretion.  (Doc. 14, at 34-36, and 15-20.)

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI, quoted in Crawford v. Washington, 541 U.S. 36, 42 (2004).  See also Pointer v. Texas, 380 U.S. 400, 406 (1965) (applicable to the states).  A central purpose of the Confrontation Clause is to allow the defendant the opportunity to cross-examination the witnesses against him.  Vasquez v. Kirkland, 572 F.3d 1029, 1035-1036 (9th Cir. 2009), cert. denied, 130 S.Ct. 1086 (2010) (citing Davis v. Alaska, 415 U.S. 308, 315-316 (1974)); Drake v. Woods, 547 F.Supp.2d 253, 264 (S.D. N.Y. 2008).  The protection of the Confrontation Clause is not subject to "the vagaries of the rules of evidence" concerning hearsay.  Crawford, 541 U.S. at 61.

However, the Confrontation Clause only "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Colvin v. Sheets, No.

2:06-CV-681, 2007 WL 5462114, at *31 (S.D. Ohio Oct. 12, 2007) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)); see also Drake, 547 F.Supp.2d at 264 (same). The Supreme Court has found that the Confrontation Clause does not prevent a trial judge from imposing "reasonable limits" on cross-examination. Vasquez, 572 F.3d at 1036 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Thus, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679; see also Washington v. Renico, 455 F.3d 722, 729 (6th Cir. 2006), cert. denied, 549 U.S. 1306 (2007); Drake, 547 F.Supp.2d at 264; Colvin, 2007 WL 5462114, at *31.

Here, the trial court limited the cross-examination of Det. Kovach concerning an unrelated confession that was later recanted. The court ruled that testimony concerning the unrelated confession would be misleading. (Doc. 14, Tr., vol. 9, at 1650.) The appellate court distinguished the two situations by noting that "Torres claimed he never confessed" at all. (Doc. 14, RX 28, at 12; Torres, 2006 WL 2023578, at *5.)

The record shows that Det. Kovach was subject to extensive cross-examination regarding the circumstances of the statement purportedly made by Torres. (Doc. 14, Tr., vol. 9, at 1741-1802, 1815-1829.) The court of appeals found that the trial court did not abuse its discretion by limiting the scope of cross. This court finds no violation of the Confrontation Clause in that ruling. See generally

12

Van Arsdall, 475 U.S. at 679; Vasquez, 572 F.3d at 1036; Washington, 455 F.3d at 729; United States v. Cody, 114 F.3d 772, 778 (8th Cir. 1997); Drake, 547 F.Supp.2d at 264; Colvin, 2007 WL 5462114, at *31.

Even if the court were to find a violation of the Confrontation Clause, that error would be subject to a harmless error analysis. Jensen v. Romanowski, 590 F.3d 373, 379 (6th Cir. 2009); Wilkey v. Jones, No. 1:05CV588, 2008 WL 6892614, at *13 (W.D. Mich. Dec. 9, 2008). On habeas review, the standard applied in determining whether or not constitutional error is harmless is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 627 (1993); Wilkey, 2008 WL 6892614, at *13. In determining whether a Confrontation Clause violation is harmless under Brecht, the court considers: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." Jensen, 590 F.3d at 379 (citing Van Arsdall, 475 U.S. at 684).

The court notes that the jury was provided with an extensive cross-examination of Det. Kovach, which allowed them to evaluate her testimony regarding Torres' statement. (Doc. 14, Tr., vol. 9, at 1741-1802, 1815-1829.) The evidence which might have led the jury to convict Torres did not simply consist of his disputed statement, but also included statements he allegedly made to two

13

inmates, blood on his shoes, as well as other circumstantial evidence. See, e.g., doc. 14, RX 28, at 5-6, 19; Torres, 2006 WL 2023578, at *2, *8. Having considered all the factors, the court would find that the trial court's limits on the cross-examination of Det. Kovach concerning an unrelated confession in another case would not rise above the level of harmless error, if there were any error at all.

However, the court find no violation of the Confrontation Clause in the state courts' rulings. The court finds that Torres has failed to demonstrate that the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## V. SUMMARY

The petition for a writ of habeas corpus should be denied. Torres concedes that the first and third grounds of his petition cannot support habeas relief. (Doc. 19, at 6, 10.) As to the second ground, the court finds that he has failed to demonstrate that the state court decisions involving the Confrontation Clause were contrary to, or involved an unreasonable application of, clearly established federal law.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.


Dated:  Mar. 30, 2010                    /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).